IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-6

 No. COA20-434

 Filed 4 January 2022

 Randolph County, 15 CRS 052178

 STATE OF NORTH CAROLINA

 v.

 CHRISTOPHER JASON THOMPSON, Defendant.

 Appeal by Defendant from judgment entered 14 March 2019 by Judge V.

 Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals

 23 March 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Kimberly D. Potter, for the State.

 Mark L. Hayes for defendant-appellant.

 MURPHY, Judge.

¶1 A trial court properly denies a defendant’s motion to dismiss a charge of felony

 fleeing to elude arrest when there is sufficient evidence, in the light most favorable

 to the State, that, inter alia, the arresting officers acted in the lawful performance of

 their duties. Here, the trial court properly denied Defendant’s motion to dismiss

 where there was sufficient evidence, in the light most favorable to the State, that the

 officers were acting in lawful performance of their duties because they had a

 reasonable articulable suspicion to detain Defendant, had probable cause to arrest
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 Defendant, and complied with N.C.G.S. § 15A-401(e)(1) and (2).

 BACKGROUND

¶2 On 21 May 2015, Defendant Christopher Thompson drove his son to Liberty

 Elementary School. The two arrived shortly after the tardy bell rang and a school

 counselor, Tracey Whatley, had secured the doors. Whatley instructed Defendant’s

 son to go to the front office to obtain a tardy slip. Defendant instead instructed his

 son to go to class and stated, “I am your tardy note.” After Whatley informed

 Defendant his son would not be let inside the school without a tardy slip, Defendant

 went to the front office with his son.

¶3 At the front office, Defendant yelled, cursed, and argued with school staff,

 maintaining that his son should not “get a tardy.” Defendant’s son was taken to class

 eventually without a tardy, while Defendant remained in the front office. A few

 minutes later, the principal, Jordi Roman, arrived at the front office and, because

 there were students in the area and Defendant was still using profanity in a raised

 voice, asked Defendant to step outside of the building. Defendant did not leave right

 away and continued using profanity. Roman asked Defendant to step outside a

 second time, and he instructed his secretary to call the police and clear the office.

 After this occurred, Defendant complied with the request to go outside. Outside the

 building, Defendant continued to argue with Roman. Defendant seemingly decided

 he wanted to leave with his son and requested his son be brought outside. After
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 multiple requests, Defendant’s son was brought outside. Several police officers

 arrived as Defendant got into his truck with his son.

¶4 Upon arrival, Liberty Police Chief David Semrad noticed that bystanders were

 looking towards Defendant’s truck and that Roman was standing outside near the

 truck. In light of the police call for a school disturbance and his observations, Chief

 Semrad concluded Defendant was the source of the reported disturbance, approached

 Defendant, and told him he was being detained. Shortly thereafter, Chief Semrad

 discussed the situation with Roman, and Roman asked Chief Semrad to ban

 Defendant from the property. Chief Semrad then asked Officer Jason Phillips to

 obtain Defendant’s identification for the ban sheet. Officer Phillips approached

 Defendant’s truck, which was running, and asked Defendant for his identification;

 however, Defendant stated he was not legally required to provide his identification

 and provided his full name. Officer Phillips requested Officer Hubert Elder to assist

 him at Defendant’s truck, and Officer Elder told Defendant he could either provide

 his license or go to jail. Defendant asked “under what North Carolina state law,” and

 Officer Elder raised his voice, responding for “obstructing my investigation.”

¶5 When Chief Semrad heard Officer Elder raise his voice, he approached

 Defendant’s truck because he felt they had “reached a point where . . . an arrest may

 be warranted.” Chief Semrad ordered Defendant to get out of his truck. Defendant

 refused to exit his truck, and Chief Semrad attempted to open the locked truck door.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 Officer Elder stated he saw Defendant “grab for the gearshift,” so he reached inside

 Defendant’s truck and attempted to obtain the keys from the ignition. Defendant

 pushed Officer Elder’s arm into the truck’s dash, and Chief Semrad reached into the

 truck and grabbed Defendant’s head and arm in an attempt to break Defendant’s grip

 from Officer Elder. The vehicle abruptly accelerated forward, and Officer Elder

 testified that “[Defendant’s] left arm momentarily came and pinned [Officer Elder] so

 that [he] could not retract.” Defendant then put the vehicle in reverse and backed

 up, at which point Officer Elder disengaged from the vehicle. Defendant drove away

 from the school at a high speed, with the police briefly in pursuit. However, after

 realizing Defendant’s son was in the truck, the police stopped pursuing Defendant.

 Shortly after the police stopped pursuing Defendant, Defendant crashed his truck

 and was subsequently arrested.

¶6 As a result of this incident, Defendant was indicted for feloniously “operat[ing]

 a motor vehicle on a highway, . . . while fleeing and attempting to elude a law

 enforcement officer, Officer H. Elder, in the lawful performance of the officer’s duties”

 in violation of N.C.G.S. § 20-141.5.1 On 7 March 2018, Defendant filed a pre-trial

 1 In the indictment, Defendant’s charge for violating N.C.G.S. § 20-141.5 was elevated

 to a felony based on the aggravated factors of “speeding in excess of 15 miles per hour over
 the legal speed limit,” “driving recklessly in violation of [N.C.G.S. §] 20-140,” and “driving
 with a child under 12 years of age in the vehicle.” See N.C.G.S. § 20-141.5(b)(1), (3), & (8)
 (2019).
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 Motion to Suppress all evidence obtained, arguing his attempted arrest was unlawful.

 The motion was denied on 8 March 2019 based on the trial court’s finding that

 Defendant’s detention was lawful. At the close of the State’s evidence, Defendant

 made a motion to dismiss based on the insufficiency of the evidence. The trial court

 denied Defendant’s motion to dismiss. At the close of all evidence, Defendant

 renewed his motion to dismiss, and the trial court again denied his motion.

 Defendant was convicted of felony fleeing to elude arrest. On 14 March 2019, the

 trial court sentenced Defendant to a suspended sentence of 6 to 17 months.

 Defendant timely appealed.

 ANALYSIS

¶7 On appeal, Defendant argues the trial court erred in denying his motion to

 dismiss because the State did not present sufficient evidence that the officers were

 acting in the lawful performance of their duties.2 Specifically, Defendant argues the

 officers acted unlawfully because (A) “they had no reasonable suspicion to detain

 [Defendant]”; (B) “they had no probable cause to arrest [Defendant]”; and (C) “the

 arrest, even if it was based on probable cause, did not comply with [N.C.G.S.] § 15A-

 Defendant was also indicted on multiple counts of assault on a law enforcement officer
 but was found not guilty of the assault charges. Defendant does not raise any challenge
 related to the indictments on appeal.
 2 We note that Defendant does not challenge the denial of his Motion to Suppress on

 appeal.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 401.” We disagree.3

¶8 “This Court reviews the trial court’s denial of a motion to dismiss de novo.”

 State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

 Upon [the] defendant’s motion for dismissal, the question
 for [us] is whether there is substantial evidence (1) of each
 essential element of the offense charged, or of a lesser
 offense included therein, and (2) of [the] defendant’s being
 the perpetrator of such offense. If so, the motion is properly
 denied.

 State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455, cert. denied, 531 U.S. 890,

 148 L. Ed. 2d 150 (2000). “In reviewing challenges to the sufficiency of evidence, we

 must view the evidence in the light most favorable to the State, giving the State the

 benefit of all reasonable inferences . . . . Contradictions and discrepancies do not

 warrant dismissal of the case but are for the jury to resolve.” State v. Scott, 356 N.C.

 591, 596, 573 S.E.2d 866, 869 (2002) (citations omitted).

¶9 Defendant was convicted of felonious fleeing to elude arrest pursuant to

 N.C.G.S. § 20-141.5. N.C.G.S. § 20-141.5 provides in relevant part:

 (a) It shall be unlawful for any person to operate a motor
 vehicle on a street, highway, or public vehicular area while
 fleeing or attempting to elude a law enforcement officer
 who is in the lawful performance of his duties. Except as
 provided in subsection (b) of this section, violation of this

 3 We emphasize that we come to our conclusion under the standard of review
 applicable to motions to dismiss. See State v. Mahatha, 267 N.C. App. 355, 358, 832 S.E.2d
 914, 918 (2019) (applying the standard of review for a motion to dismiss for insufficiency of
 the evidence, and not discussing the standard of review for a motion to suppress).
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 section shall be a Class 1 misdemeanor.

 (b) If two or more of the following aggravating factors are
 present at the time the violation occurs, violation of this
 section shall be a Class H felony.

 N.C.G.S. § 20-141.5(a)-(b) (2019) (emphasis added). We address only whether the

 officers were in the lawful performance of their duties as it is the only element that

 Defendant challenges on appeal. See N.C. R. App. P. 28 (“Issues not presented and

 discussed in a party’s brief are deemed abandoned.”).

 A. Reasonable Articulable Suspicion

¶ 10 Defendant first argues the police officers departed from the lawful performance

 of their duties because they lacked reasonable articulable suspicion to detain him.

¶ 11 “The Fourth Amendment protects individuals against unreasonable searches

 and seizures. The North Carolina Constitution provides similar protection.” State v.

 Hernandez, 208 N.C. App. 591, 597, 704 S.E.2d 55, 59 (2010) (marks and citations

 omitted), disc. rev. denied, 365 N.C. 86, 731 S.E.2d 829 (2011). “‘[B]rief investigatory

 detentions such as those involved in the stopping of a vehicle’ are subject to Fourth

 Amendment protections.” Mahatha, 267 N.C. App. at 358, 832 S.E.2d at 918 (quoting

 State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)). “A police officer may

 effect a brief investigatory seizure of an individual where the officer has reasonable,

 articulable suspicion that a crime may be underway.” State v. Barnard, 184 N.C.

 App. 25, 29, 645 S.E.2d 780, 783 (2007), aff’d, 362 N.C. 244, 658 S.E.2d 643, cert.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 denied, 555 U.S. 914, 172 L. Ed. 2d 198 (2008). “To determine whether this

 reasonable suspicion exists, a court must consider the totality of the circumstances[.]”

 State v. Kincaid, 147 N.C. App. 94, 97, 555 S.E.2d 294, 298 (2001) (citations and

 marks omitted). Reasonable articulable suspicion “must be based on specific and

 articulable facts, as well as the rational inferences from those facts, as viewed

 through the eyes of a reasonable, cautious officer, guided by his experience and

 training.” Watkins, 337 N.C. at 441, 446 S.E.2d at 70; see also State v. Fleming, 106

 N.C. App. 165, 171, 415 S.E.2d 782, 785 (1992) (holding a violation of the Fourth

 Amendment occurred when the detaining officer “had only a generalized suspicion

 that the defendant was engaged in criminal activity, based upon the time, place, and

 the officer’s knowledge that [the] defendant was unfamiliar to the area”).

¶ 12 Here, Chief Semrad had a “reasonable, articulable suspicion that a crime”—

 specifically, disorderly conduct at a school in violation of N.C.G.S. § 14-288.4(a)(6)—

 “may be underway.” Barnard, 184 N.C. App. at 29, 645 S.E.2d at 783. N.C.G.S. § 14-

 288.4(a)(6) reads:

 (a) Disorderly conduct is a public disturbance intentionally
 caused by any person who . . . :

 (6) Disrupts, disturbs or interferes with the teaching of
 students at any public or private educational institution or
 engages in conduct which disturbs the peace, order or
 discipline at any public or private educational institution
 or on the grounds adjacent thereto.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 N.C.G.S. § 14-288.4(a)(6) (2019). Our Supreme Court has interpreted this language,

 stating “[w]hen the words ‘interrupt’ and ‘disturb’ are used in conjunction with the

 word ‘school,’ they mean to a person of ordinary intelligence a substantial interference

 with, disruption of and confusion of the operation of the school in its program of

 instruction and training of students there enrolled.” In re Eller, 331 N.C. 714, 718,

 417 S.E.2d 479, 482 (1992). We recently observed that this rule from In re Eller

 applies to both parts of the disjunctive—“[d]isrupts, disturbs or interferes with the

 teaching of students at any public or private educational institution” and “engages in

 conduct which disturbs the peace, order or discipline at any public or private

 educational institution or on the grounds adjacent thereto”—in N.C.G.S. § 14-

 288.4(a)(6). See State v. Humphreys, 275 N.C. App. 788, 793, 853 S.E.2d 789, 793

 (2020) (citing In re Eller, 331 N.C. at 718, 417 S.E.2d at 482; In re Grubb, 103 N.C.

 App. 452, 453-54, 405 S.E.2d 797, 798 (1991); In re Brown, 150 N.C. App. 127, 129-

 131, 562 S.E.2d 583, 585-586 (2002); In re Pineault, 152 N.C. App. 196, 199, 566

 S.E.2d 854, 857, disc. rev. denied, 356 N.C. 302, 570 S.E.2d 728 (2002); In re M.G.,

 156 N.C. App. 414, 416, 576 S.E.2d 398, 400-01 (2003); In re S.M., 190 N.C. App. 579,

 582-83, 660 S.E.2d 653, 655-56 (2008)).

¶ 13 Chief Semrad received information about a reported “disturbance” at the

 school, which “was almost unheard of with [Roman]” as he “had always gone out of

 his way not to involve law enforcement at the school.” Upon his arrival at the school,
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 Chief Semrad noticed parents standing and looking towards Defendant’s truck, as

 well as someone inside the school looking out the window towards the truck, Roman

 standing near the truck, and Defendant “staring intently at [Chief Semrad] in the

 side view mirror.” Chief Semrad approached Defendant’s vehicle, and Defendant

 asked Chief Semrad if he was being detained. After noting that the police were

 alerted that there was “a disturbance at the school and people were staring at the

 vehicle,” Chief Semrad concluded Defendant “was the person involved in the

 disturbance” and “told [Defendant] that he was not free to leave, that he was

 detained.”

¶ 14 Furthermore, when asked whether he had intended to charge Defendant with

 anything after he detained him, Chief Semrad testified, “we were still investigating

 the disturbance. We’d only had – or I’d only had a very brief conversation with an

 upset principal. I needed more specifics, more details, and I needed to know who else

 was involved and what the entire situation was.” Chief Semrad instructed the other

 officers to obtain Defendant’s identification while he “continued talking to Principal

 Roman trying to gather information in regard[] to . . . disorderly conduct, and that

 involves disturbing the school, cussing in the school, threatening actions, threatening

 behavior, disrupting staff, disrupting students, and that’s definitely what I was

 hearing at the time from Mr. Roman.” Chief Semrad was asked about his purpose in

 detaining Defendant and testified to the following:
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 [CHIEF SEMRAD:] It was clear to me that the school was
 still disrupted.

 [THE STATE:] And you talked about the disturbance at
 school. You’ve been asked about your familiarity with
 certain laws this morning -- or this afternoon. Are you
 familiar with the law regarding public disturbance at
 school?

 [CHIEF SEMRAD:] I believe that’s North Carolina General
 Statute 14-288, Section 4 of that statute.

 [THE STATE:] Was that something that you were
 investigating at the time?

 [CHIEF SEMRAD:] Yes, sir.

¶ 15 Considering the evidence in the light most favorable to the State, under the

 totality of the circumstances Chief Semrad had a reasonable articulable suspicion

 that there was an ongoing “substantial interference with, disruption of and confusion

 of the operation of the school in its program of instruction and training of students

 there enrolled” in violation of N.C.G.S. § 14-288.4(a)(6).4 In re Eller, 331 N.C. at 718,

 417 S.E.2d at 482 (1992). Chief Semrad lawfully detained Defendant for a brief

 investigatory stop. Consequently, for the purpose of the motion to dismiss,

 Defendant’s detention was lawful and Chief Semrad was lawfully performing his

 duties.

 4 Defendant also argues that we should adopt a rule holding that Terry stops for a

 misdemeanor that has already been completed are per se unreasonable. However, viewing
 the evidence in the light most favorable to the State, the school disturbance was ongoing at
 the time of Defendant’s detention. As a result, we need not reach this question.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 B. Probable Cause

¶ 16 Defendant next argues that, even if the initial detention was lawful, Chief

 Semrad “still acted beyond the scope of his duties by arresting [Defendant]” without

 probable cause.

¶ 17 Under N.C.G.S. § 15A-401(b)(1), “[a]n officer may arrest without a warrant any

 person who the officer has probable cause to believe has committed a criminal offense

 . . . in the officer’s presence.” N.C.G.S. § 15A-401(b)(1) (2019). “An arrest is

 constitutionally valid whenever there exists probable cause to make it.” State v.

 Chadwick, 149 N.C. App. 200, 202, 560 S.E.2d 207, 209, disc. rev. denied, 355 N.C.

 752, 565 S.E.2d 672 (2002).

 Probable cause is defined as those facts and circumstances
 within an officer’s knowledge and of which he had
 reasonably trustworthy information which are sufficient to
 warrant a prudent man in believing that the suspect had
 committed or was committing an offense. The [United
 States] Supreme Court has explained that probable cause
 does not demand any showing that such a belief be correct
 or more likely true than false. A practical, nontechnical
 probability that incriminating evidence is involved is all
 that is required. A probability of illegal activity, rather
 than a prima facie showing of illegal activity or proof of
 guilt, is sufficient.

 State v. Biber, 365 N.C. 162, 168-69, 712 S.E.2d 874, 879 (2011) (marks and citations

 omitted).

¶ 18 Our Supreme Court has held that
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 when a law enforcement officer, by word or actions,
 indicates that an individual must remain in the officer’s
 presence or come to the police station against his will, the
 person is for all practical purposes under arrest if there is
 a substantial imposition of the officer’s will over the
 person’s liberty.

 See State v. Zuniga, 312 N.C. 251, 260, 322 S.E.2d 140, 145 (1984). Applying this

 principle here, an attempted arrest of Defendant occurred when Chief Semrad

 instructed Defendant to leave the truck, Defendant refused, and Chief Semrad and

 Officer Elder forcibly attempted to remove Defendant’s keys from the ignition. These

 actions amounting to an attempted arrest occurred within approximately six seconds.

 After this sequence of events, Chief Semrad and Officer Elder, by their actions, had

 indicated that Defendant would be coming to the police station against his will. Both

 Chief Semrad and Officer Elder were attempting to arrest Defendant at this point.

 See State v. Tilley, 44 N.C. App. 313, 317, 260 S.E.2d 794, 797 (1979) (finding there

 was more than one arresting officer based on the facts of the case.”).

¶ 19 Additionally, although Defendant’s argument focuses on Chief Semrad lacking

 the authority to arrest him, the language of the indictment states Defendant was

 fleeing to elude Officer Elder, not Chief Semrad.5 Despite both officers attempting to

 arrest Defendant, we focus only on the attempted arrest by Officer Elder here because

 Defendant was only indicted for fleeing to elude Officer Elder.

 5 We note that Defendant does not raise any argument related to the indictments.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

¶ 20 N.C.G.S. § 20-29 provides:

 [a]ny person operating or in charge of a motor vehicle,
 when requested by an officer in uniform . . . who shall
 refuse to write his name for the purpose of identification or
 to give his name and address and the name and address of
 the owner of such vehicle, . . . or who shall refuse, on
 demand of such officer or such other person, to produce his
 license . . . shall be guilty of a Class 2 misdemeanor.

 N.C.G.S. § 20-29 (2019). The Record demonstrates Officer Phillips and Officer Elder

 both made a lawful request for Defendant’s driver’s license pursuant to N.C.G.S. §

 20-29. Defendant refused these requests and instead stated his full name.

 Defendant’s refusal to comply with the officers’ request under N.C.G.S. § 20-29

 constituted a misdemeanor.6 Since a misdemeanor under N.C.G.S. § 20-29 occurred

 within Officer Phillips’ and Officer Elder’s presence, for the purpose of the motion to

 dismiss, Officer Elder had probable cause to arrest Defendant pursuant to N.C.G.S.

 § 15A-401(b)(1).

 6 Defendant argues that he complied with N.C.G.S. § 20-29 by providing his name.

 We note that this statute lists several additional items not relevant to the issue here.
 However, each item listed in N.C.G.S. § 20-29 begins with “or who shall.” N.C.G.S. § 20-29
 (2019). Contrary to Defendant’s reading, a plain reading of this language indicates that each
 action following “or who shall” is a Class 2 Misdemeanor. See id.; see also State v. Hooper,
 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) (citations and marks omitted) (“The primary
 goal of statutory construction is to effectuate the purpose of the legislature in enacting the
 statute. The first step in determining a statute’s purpose is to examine the statute’s plain
 language. Where the language of a statute is clear and unambiguous, there is no room for
 judicial construction and the courts must construe the statute using its plain meaning.”). As
 a result, Defendant did not comply with N.C.G.S. § 20-29 by providing his name when his
 license was requested.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 C. N.C.G.S. § 15A-401(e)

¶ 21 Finally, Defendant argues the police officers failed to comply with N.C.G.S. §

 15A-401(e) by failing to provide Defendant with notice of their authority and purpose

 for arresting him, and improperly using force to enter his vehicle. Defendant

 maintains that, as a result, the officers were no longer in the lawful performance of

 their duties when they attempted to arrest him and use force to enter his vehicle.

¶ 22 N.C.G.S. § 15A-401(e) provides in relevant part:

 (1) A law-enforcement officer may enter private premises
 or a vehicle to effect an arrest when:

 a. . . . the officer is authorized to arrest a person without a
 warrant or order having been issued,

 b. The officer has reasonable cause to believe the person to
 be arrested is present, and

 c. The officer has given, or made reasonable effort to give,
 notice of his authority and purpose to an occupant thereof,
 unless there is reasonable cause to believe that the giving
 of such notice would present a clear danger to human life.

 (2) The law-enforcement officer may use force to enter the
 premises or vehicle if he reasonably believes that
 admittance is being denied or unreasonably delayed, or if
 he is authorized under subsection (e)(1)c to enter without
 giving notice of his authority and purpose.

 N.C.G.S. § 15A-401(e) (2019).

¶ 23 Officer Elder told Defendant to hand his license over or he would go to jail.

 According to Officer Elder’s testimony, Defendant then asked, “under what North
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 Carolina state law,” to which Officer Elder replied for “obstructing my investigation”

 and “attempted to tell [Defendant] that it was [N.C.G.S. §] 14-223. Resisting and

 obstructing.” Officer Elder testified that he “was also going to add that it was under

 [N.C.G.S. §] 20-29 which requires if you’re operating a motor vehicle and a law

 enforcement officer requests your ID, you must give it,” but Defendant “attempted to

 talk over [Officer Elder and] admonished [him].” In the light most favorable to the

 State, the requirements of N.C.G.S. § 15A-401(e)(1)(a)-(b) are satisfied here because

 Officer Elder was authorized to arrest Defendant without a warrant pursuant to

 N.C.G.S. § 20-29 and N.C.G.S. § 15A-401(b)(1), as discussed in Part B above, and

 knew Defendant was present. Additionally, Officer Elder made reasonable efforts to

 give Defendant notice that he was going to be arrested for “unlawfully resist[ing],

 delay[ing] or obstruct[ing] a public officer in discharging or attempting to discharge

 a duty of his office” as required under N.C.G.S. § 15A-401(e)(1)(c). N.C.G.S. § 14-223

 (2019).

¶ 24 Further, Chief Semrad testified he instructed Defendant to step out of his

 vehicle and Defendant refused. Chief Semrad then attempted to open Defendant’s

 door; however, it was locked, and Defendant again refused to get out of his vehicle.

 Thereafter, Officer Elder testified he saw Defendant grab the gearshift, “[a]nd in

 order to try and prevent any escape [Officer Elder] [instinctively] reached for the

 keys[.]” Chief Semrad and Officer Elder both testified that Defendant refused their
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

 entry into his vehicle on two occasions and Officer Elder believed he needed to

 confiscate Defendant’s keys to prevent Defendant’s escape, and the jury could have

 concluded that the officers reasonably believed admittance was being denied or

 unreasonably delayed. Accordingly, for the purpose of the motion to dismiss and in

 the light most favorable to the State, the officers were authorized to “use force to enter

 the . . . vehicle” and did not act unlawfully in doing so. N.C.G.S. § 15A-401(e)(2)

 (2019).

¶ 25 Viewing the evidence in the light most favorable to the State, the issue of

 whether the officers were performing their lawful duties was “sufficient for jury

 consideration.” Scott, 356 N.C. at 597, 573 S.E.2d at 869. The trial court did not err

 by denying Defendant’s motion to dismiss. See Mahatha, 267 N.C. App. at 360, 832

 S.E.2d at 919 (holding the trial court did not err by denying the defendant’s motion

 to dismiss for insufficient evidence when the officer “was lawfully performing his

 duties at the time of the stop”).

 CONCLUSION

¶ 26 In the light most favorable to the State, there was sufficient evidence that the

 officers acted within the lawful performance of their duties, satisfying the challenged

 element of N.C.G.S. § 20-141.5(a). Accordingly, the trial court did not err in denying

 Defendant’s motion to dismiss the charge of felony fleeing to elude arrest.

 NO ERROR.
 STATE V. THOMPSON

 2022-NCCOA-6

 Opinion of the Court

Judges DIETZ and GORE concur.